IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE HYDAK, *Plaintiff,* v. DOMINION ENERGY TRANSMISSION, INC., *Defendant.* | Civil Action No. 2:21-cv-1066 Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Wayne Hydak ("Hydak") filed this negligence action against Defendant Dominion Energy Transmission, Inc. ("Dominion") in the Court of Common Pleas of Westmoreland County, Pennsylvania, alleging that Dominion is responsible for the severe crush injuries he suffered while working at a natural gas facility that Dominion owned and operated. (ECF No. 1-3). Dominion removed the case to this Court on the basis of diversity jurisdiction.[1] *See* 28 U.S.C. §§ 1332, 1441. (ECF No. 1). It then filed a Third-Party Complaint against Third-Party Defendants Univar Solutions USA Inc. ("Univar") and Weavertown Environmental Group ("WEG"), asserting that those entities are liable to Dominion for Hydak's underlying negligence claims.[2] (ECF No. 5). Univar and WEG now move to dismiss Dominion's Third-Party

---

[1] There is complete diversity of citizenship between the parties: Hydak is a citizen of Pennsylvania (where he resides), and Dominion is a citizen of Delaware (where it is incorporated) and West Virginia (where it maintains its principal place of business). (ECF No. 1, ¶¶ 4–5). Additionally, the matter in controversy exceeds $75,000. (ECF No. 1-2).

[2] The Court has supplemental jurisdiction over the third-party claims. *See* 28 U.S.C. § 1367(a).

1

Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 17). The Court will grant the motion for the reasons below.

## I. BACKGROUND

Dominion owns and operates a natural gas compressor station and storage facility—known as Oakford Station—in Delmont, Pennsylvania. (ECF No. 1-3, ¶ 2). In August 2019, Dominion hired WEG to perform asbestos-removal work at Oakford Station. (ECF No. 5, ¶ 10). The purchase order contract stated that WEG would "provide all labor, supervision, tools, vehicles, materials and equipment required to remove asbestos transite panels from pump house #2" and "to remove asbestos transite sheeting and windows from the walls and roof of the Compressor Building #2." (ECF No. 5-1, pp. 5–6). It further stated that Dominion—not WEG—would "provide scaffolding erected to access the materials." (*Id.* at 6). In addition, the purchase order contract expressly incorporated the terms and conditions of a preexisting value contract between Dominion and WEG. (*Id.* at 2).[3]

Several provisions of the earlier contract are relevant here. First, the value contract contained an indemnity provision:

> To the extent allowed by law, Supplier [(WEG)] agrees to indemnify, hold harmless and at Purchaser's [(Dominion's)] sole option, defend Purchaser, Purchaser's Affiliates, and each of their respective directors, officers, employees, contractors, and agents (each an "Indemnitee") from and against any and all claims, demands, costs, losses, liabilities, lawsuits, or other proceedings brought or threatened by any third party, including but not limited to an Indemnitee, Supplier, any of Supplier's employees or agents, any Subcontractor, or any

[3] Generally, "a district court ruling on a motion to dismiss [under Rule 12(b)(6)] may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). However, there are a few exceptions to that general rule, and the contracts referenced above fall within two of those exceptions. They are exhibits attached to the complaint, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), and documents that are "integral to or explicitly relied upon in the complaint," *Burlington*, 114 F.3d at 1426 (citation omitted). (*See* ECF No. 5, ¶¶ 10–11; ECF No. 5-1). The Court may, therefore, properly consider the contracts at this stage of the litigation.

> Subcontractors' employees or agents (each, a "Third Party Claim"), and to pay all of each Indemnitee's costs in connection with, arising from, or relating to any Third Party Claim, including but not limited to, any judgment, amounts paid in settlement, fines, penalties, forfeitures, and expenses (including reasonable attorneys' fees through final appeal), whether at law, in equity, or administrative in nature, in any manner arising out of, resulting from, or caused by, or in connection with: (a) this Agreement; (b) personal injury or death; (c) property damage; (d) violation of law, regulation, rule or ordinance (including but not limited to data privacy laws); (e) Breaches of Security Involving Regulated PII, regardless of whether an Indemnitee is required to take any action under any state or federal law; or (f) Supplier's breach of this Agreement.  Supplier will only be liable under subsections (a), (b) and (c) of the preceding sentence for Third Party Claims to the extent arising from the negligence, gross negligence or willful misconduct of Supplier, a Subcontractor, or Supplier's or Subcontractor's employees and/or agents.  Supplier will not be liable under this Indemnity Section for any personal injuries, deaths, or property damage to the extent that they are caused by an Indemnitee's negligence, gross negligence or willful misconduct.

(*Id.* at 168).  Second, it contained a forum selection clause:

> The parties agree that any litigation of or concerning this Agreement shall be maintained in the Circuit Court of Chesterfield, Virginia or the United States District Court for the Eastern District of Virginia, Richmond Division, and submit to their exclusive jurisdiction.  Each party hereto irrevocably waives, to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to the laying of venue of any such proceeding brought in such courts, including that either is an inconvenient forum.

(*Id.* at 179–80).  Third, and finally, the value contract contained a choice of law provision:

> The parties intend that this Agreement be governed by Virginia law without giving effect to Virginia's choice of laws principles.

(*Id.* at 179).

WEG subsequently performed the contracted-for asbestos-removal work at Oakford Station.  In doing so, WEG's employees—including Hydak[4]—utilized "an A-Frame drywall cart to transport the transite panels away from the facility." (ECF No. 1-3, ¶ 5).  This required Hydak and his coworkers to "push[] the drywall cart over a grated walkway"—an "exit route" of which

---

[4] Hydak's Complaint does not identify WEG by name as his employer, but it does state that "Plaintiff performed duties for a 3rd party contractor hired by Defendant to remove transite (asbestos) panels from the premises." (ECF No. 1-3, ¶ 3).  Since Dominion hired WEG to perform that work, the Court infers that Hydak was employed by WEG.

3

Dominion was allegedly aware. (*Id.* ¶ 6). However, the corner panel of the grated walkway "lacked appropriate structural support and was not fastened or secured to its adjacent panels." (*Id.* ¶ 7). It eventually gave way on October 9, 2019. As Hydak "hauled transite panels across the grated walkway," the corner panel "failed and collapsed, causing the A-Frame drywall cart and its load to fall on [Hydak]." (*Id.* ¶ 10). Hydak suffered "severe and permanent crush injuries," including a fractured pelvis. (*Id.* ¶¶ 11, 36).

In July 2021, Hydak filed suit against Dominion on negligence grounds. In the underlying Complaint, he alleges that Dominion "owned, operated and controlled the premises of Oakford facility, including specifically the corner panel of its grated walkway." (*Id.* ¶ 12). He further alleges that Dominion "knew, or should have known[,] that the corner panel of its grated walkway, while unsupported and unsecured, comprised a dangerous and hazardous condition," but Dominion "failed to exercise reasonable care to protect [him]." (*Id.* ¶¶ 14–15). In particular, Hydak contends that Dominion was negligent in failing to warn him of the dangerous condition and failing to properly install, inspect, and maintain the walkway. (*Id.* ¶ 15). He asserts that Dominion's negligence caused his injuries, and he seeks compensatory damages. (*Id.* ¶ 36).

At some point prior to filing this suit, Hydak approached Dominion and informed it of his claims. (ECF No. 5, ¶ 13). In March 2021, Dominion tendered Hydak's claims to WEG for "indemnification and defense" pursuant to the terms of the contract between Dominion and WEG. (*Id.* ¶ 15). Dominion alleged that "WEG's negligent actions and/or the actions of its employees were the direct cause of [Hydak's] alleged injury." (*Id.*). But in June 2021, Univar—which by this time had "assumed all liabilities of WEG"—denied Dominion's indemnification request. (*Id.* ¶¶ 12, 16). In response, in August 2021, Dominion filed a three-count Third-Party Complaint against Univar and WEG. In Count I, Dominion asserts that Univar and WEG

4

breached the contract by failing to accept Dominion's tender of Hydak's claims. (*Id.* ¶¶ 18–23). In Count II, Dominion seeks a declaratory judgment that Univar and WEG owe a duty to indemnify it from any judgment Hydak may obtain. (*Id.* ¶¶ 24–25). Finally, in Count III, Dominion brings an alternate claim of contribution against Univar and WEG should Hydak's claims succeed and should Dominion's first two claims fail. (*Id.* ¶ 26–27). Univar and WEG subsequently filed a Motion to Dismiss Dominion's Third-Party Complaint under Rule 12(b)(6). (ECF No. 17).

## II. ANALYSIS

Univar and WEG make several arguments in support of their Motion to Dismiss. First, they assert that all three of Dominion's claims are insufficiently pleaded. (ECF No. 17-3, pp. 6–7). Second, they contend that this Court is an improper forum for adjudication of Dominion's claims due to a contractual forum selection clause. (*Id.* at 9–12). And third, they argue that Dominion's contribution claim is barred by Pennsylvania law. (*Id.* at 8). The Court need only address the latter two arguments, which prove dispositive.

**A. Counts I and II are subject to a contractual forum selection clause.**

WEG and Univar seek to enforce the forum selection clause in their contract with Dominion. That clause provides that "any litigation of or concerning" the contract "shall be maintained in the Circuit Court of Chesterfield, Virginia or the United States District Court for the Eastern District of Virginia, Richmond Division." (ECF No. 5-1, p. 180). Notwithstanding that mandatory provision, Dominion filed its Third-Party Complaint in the United States District Court for the Western District of Pennsylvania. WEG and Univar thus move to dismiss the Third-Party Complaint under Rule 12(b)(6). *See Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001) (holding that "a 12(b)(6) dismissal is a permissible means of

enforcing a forum selection clause that allows suit to be filed in another federal forum"); *see also Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944–45 (3d Cir. 1988) (upholding dismissal under Rule 12(b)(6) based on a forum selection clause).[5] They argue that the clause is valid and that all three of Dominion's claims fall within the scope of the clause. *See Polytek Dev. Corp. v. 'Doc' Johnson Enters.*, 532 F. Supp. 3d 243, 248 (E.D. Pa. 2021) ("In order to enforce a forum selection clause, it must first be determined that the clause is valid and that the litigation at issue falls within the scope of the clause."). As explained below, the Court holds that the forum selection clause is valid and enforceable. However, only Counts I and II—breach of contract and contractual indemnification—fall within the scope of the clause. The Court will enforce the forum selection clause and dismiss the contractual claims without prejudice.

### 1. The forum selection clause is valid and enforceable.

A contractual forum selection clause "represents the parties' agreement as to the most proper forum" to litigate certain disputes. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In considering the enforceability of such a clause, a federal court sitting in diversity jurisdiction must apply federal law. *See Jumara v. State Farm Ins.*, 55 F.3d 873, 877 (3d Cir. 1995); *see also Collins v.*

---

[5] Subsequent to the Court of Appeals for the Third Circuit's decision in *Salovaara*, the Supreme Court held that a forum selection clause designating another federal forum may be enforced through a motion to transfer under 28 U.S.C. § 1404(a), and a clause selecting a state or foreign forum may be enforced through the doctrine of *forum non conveniens*. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59–60 (2013). But the Supreme Court expressly declined to address whether "a defendant could use Rule 12(b)(6) to enforce a forum-selection clause." *Id.* at 61. The Supreme Court's decision in *Atlantic Marine Construction*, therefore, did not abrogate the Third Circuit's holding in *Salovaara* that "a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause." *Salovaara*, 246 F.3d at 298. Here, WEG and Univar have been very clear in their papers that they are "not seeking a transfer, but rather dismissal pursuant to Rule 12(b)(6)." (ECF No. 23 p. 5, n.5). As such, the Court considers their motion under Rule 12(b)(6), not under § 1404(a) or the doctrine of *forum non conveniens*. *See Salovaara*, 246 F.3d at 298 ("[W]hen a defendant moves under Rule 12, a district court retains the judicial power to dismiss notwithstanding its consideration of § 1404.").

*Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017). Relevant federal law provides that a forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1218 (3d Cir. 1991) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)); *see also Atl. Marine Constr. Co.*, 571 U.S. at 63 ("The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. For that reason, . . . a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." (cleaned up)). The party seeking to avoid a forum selection clause bears a "heavy burden" of demonstrating that the clause is unreasonable. *M/S Bremen*, 407 U.S. at 18. He or she must make a "strong showing," *id.* at 15, "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable," *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983). *See also Collins*, 874 F.3d at 181; *Foster*, 933 F.2d at 1219.

Dominion has not met that burden here. It does not make any argument that the clause arose through fraud or overreaching. Nor does it argue that enforcing the clause would violate a strong public policy of the forum. Instead, Dominion argues that disregarding the clause and permitting its third-party claims to proceed in this Court "preserves judicial economy and avoids waste." (*Id.* at 7). But "considerations of judicial economy alone do not permit courts to ignore a presumptively valid forum selection clause." *Pinkus v. Sirius XM Radio Inc.*, 255 F. Supp. 3d 747, 751 (N.D. Ill. 2017) (cleaned up); *see also Polytek Dev. Corp.*, 532 F. Supp. 3d at 248 ("To rise to the level of unreasonableness, the objecting party must show more than 'mere

inconvenience or additional expense.'" (citation omitted)). Dominion also argues that "enforcement of the forum selection clause is unreasonable" because it "inhibits [Dominion's] ability to properly pursue its third-party claims for breach of contract." (ECF No. 22, p. 9). Specifically, Dominion contends that "the third-party claims are not capable of being adjudicated separately, because the indemnification and contribution claims are factually and legally interconnected to the underlying dispute." (*Id.* at 8). However, the fact that the claims are related does not mean that they are incapable of being adjudicated separately. To the contrary, Hydak's underlying negligence claims must be resolved *prior* to Dominion's third-party claims for indemnification and contribution. And there is no discernable reason why those distinct determinations cannot be made by different courts. Dominion has thus failed to demonstrate that the bargained-for forum in Virginia is "so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *Foster*, 933 F.2d at 1219 (quoting *M/S Bremen*, 407 U.S. at 18). It has not met its heavy burden of showing that the forum selection clause is unreasonable. The clause is, therefore, valid and enforceable.

### 2. Counts I and II fall within the scope of the forum selection clause.

The next question is whether any of Dominion's claims fall within the scope of the clause. This issue "is one of contract interpretation." *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997). Since contract interpretation is substantive, rather than procedural, federal courts must "apply state contract law to assess the scope of [a forum selection clause]." *Collins*, 874 F.3d at 182–83. To determine which state law governs the contract between Dominion and WEG/Univar, the Court looks to the choice of law rules of Pennsylvania. *See id.* at 183 ("In diversity cases . . ., we look to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of

substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Pennsylvania courts generally give effect to contractual choice of law provisions. *See Smith v. Commonwealth Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. 1989) (citing Restatement (Second) of Conflict of Laws § 187 (Am. L. Inst. 1988)); *see also Gay v. CreditInform*, 511 F.3d 369, 389–90 (3d Cir. 2007). The Court will, therefore, honor the parties' choice of law selection in their contract and apply Virginia law to assess the scope of the forum selection clause. (ECF No. 5-1, p. 179).

When a contract is "clear and unambiguous," Virginia courts "construe the contract as it is written." *Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc.*, 662 S.E.2d 77, 80 (Va. 2008). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Id.* (quoting *W.F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc.*, 123 S.E.2d 377, 381 (Va. 1962)). Virginia courts thus "construe the contract as a whole" and "giv[e] terms their ordinary meaning unless some other meaning is apparent from the context." *Schuiling v. Harris*, 747 S.E.2d 833, 836 (Va. 2013). A term's ordinary meaning, moreover, may be established with reference to a dictionary definition. *See, e.g., Palmer & Palmer Co.*, 662 S.E.2d at 290–91.

The forum selection clause here is clear and unambiguous: it governs "any litigation of or concerning" the contract. (ECF No. 5-1, p. 180). *See Of*, The Random House Dictionary of the English Language 1343 (2d ed. 1987) (defining "of" as indicating "derivation, origin, or source" or "reference or respect"); *Concerning*, Random House Dictionary 423 (defining "concerning" as "relating to; regarding; about"). The question becomes whether any of Dominion's claims in the

Third-Party Complaint are "of or concerning" the contract. WEG and Univar argue that all three of Dominion's claims "arise out of or concern the contract." (ECF No. 17-3, p. 9). They contend that (1) the "breach of contract claim seeks enforcement of the contract," (2) the "declaratory judgment claim seeks interpretation of the contract," and (3) the contribution claim "concern[s] personal injuries arising out of performance of the contract." (*Id.*). Dominion does not challenge WEG and Univar's first and second arguments, and nor could it. The "Breach of *Contract*" claim at Count I and the "Declaratory Relief – *Contractual* Indemnification" claim at Count II are clearly "of or concerning" the contract. (ECF No. 5, pp. 4–5) (emphasis added). However, Dominion does challenge WEG and Univar's third argument. It asserts that the contribution claim at Count III "exist[s] untethered to the[] contract." (ECF No. 22, p. 9). A review of the Third-Party Complaint supports Dominion's assertion. Though Dominion pleaded its first two claims with express reference to its contract with WEG/Univar, it made no reference whatsoever to the contract in pleading its third claim. (*Compare* ECF No. 5, ¶¶ 18–25, *with id.* ¶¶ 26–27). It follows that Dominion's contribution claim derives not from the contract, but rather from some other body of state law—be it common law or statutory—that provides a right to contribution. And the parties actually agree on which state law applies to the contribution claim: Pennsylvania. (ECF No. 17-3, p. 8; ECF No. 22, p. 5). The Court concludes that the Pennsylvania law contribution claim is non-contractual in nature and thus not subject to the forum selection clause. Although Hydak's underlying injuries may have arisen during performance of the contract, that does not mean that Dominion's contribution claim constitutes "litigation of or concerning" the contract. Rather, Dominion has attempted to bring that claim irrespective of the existence of any contract.

The Court holds that Counts I and II of the Third-Party Complaint fall within the scope of a valid and enforceable forum selection clause. As such, the U.S. District Court for the Western District of Pennsylvania is not the appropriate forum for adjudication of those claims. Counts I and II will be dismissed without prejudice, and Dominion may re-file such claims in the Circuit Court of Chesterfield, Virginia, or the United States District Court for the Eastern District of Virginia, Richmond Division. *See Claudio-de León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 49 (1st Cir. 2014) ("[I]t is our practice for dismissals due to forum selection clauses to be dismissed without prejudice so the case may be re-filed in the appropriate forum.").

### B. Count III is barred by Pennsylvania law.

WEG and Univar next argue that Dominion's contribution claim is barred by Pennsylvania law.[6] (ECF No. 17-3, p. 8; ECF No. 23, p. 8). They point to Pennsylvania's Workers' Compensation Act ("WCA"), which applies to "all injuries occurring within th[e] Commonwealth." 77 P.S. § 1. That statute, as its name implies, sets forth a comprehensive scheme for compensating workers for injuries that arose during the course of their employment. *See id.* § 431 ("Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence . . . ."). The remedy under the WCA is "exclusive"—it supplants an employee's "entitle[ment] to damages in any action at law or otherwise." *Id.* § 481(a). However, if an employee's injury is "caused by a third party," then the employee "may bring their action at law against such third party." *Id.* § 481(b). But the third party is then barred from recovering any "damages, contribution, or indemnity" from the employer, except under limited circumstances:

---

[6] As mentioned above, the parties agree that Pennsylvania law governs this claim. (ECF No. 17-3, p. 8; ECF No. 22, p. 5).

> [T]he employer . . . shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

*Id.*; *see also Holbrook v. Woodham*, 2009 WL 365681, at *5 (W.D. Pa. Feb. 13, 2009) ("Pennsylvania courts and federal courts applying Pennsylvania law have uniformly interpreted this provision to grant employers broad statutory immunity from suits by third parties." (citations omitted)). Relying on this provision, WEG and Univar contend that Dominion's contribution claim is barred because "[t]here is no written cont[r]act expressly providing [Dominion] a right to contribution." (ECF No. 23, p. 8).

Dominion makes no argument directly in response. It does not argue, for example, that the WCA's employer immunity provision is inapplicable because Dominion has a contractual right to contribution.[7] Instead, Dominion argues simply that it has a "right to contribution" under Pennsylvania's Uniform Contribution Among Tort-feasors Act ("UCATA"). (ECF No. 22, p. 5). This argument falls short. The UCATA provides that "[t]he right of contribution exists among joint tort-feasors," 42 Pa. C.S. § 8324(a), defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property," *id.* § 8322. But the WCA provides that employers cannot be held liable in tort. *See* 77 P.S. § 481(a) ("The liability of an employer under this act shall be exclusive and in place of any and all other liability . . . ."); *see also Snare v. Ebensburg Power Co.*, 637 A.2d 296, 298 (Pa. Super. 1993) ("The exclusivity provision of the Workers' Compensation Act essentially 'bars tort actions flowing from any work-related injury.'" (citation omitted)). Employers are thus categorically excluded from the UCATA's definition of joint tortfeasor by virtue of the WCA's immunity provision. *See Tsarnas v. Jones*

---

[7] Indeed, that argument would blatantly contradict Dominion's repeated assertions—as discussed above—that its contribution claim is "non-contract related." (ECF No. 22, p. 9).

*& Laughlin Steel Corp.*, 396 A.2d 1241, 1250 (Pa. Super. 1978) (Spaeth, J., opinion in support of reversal) (explaining that "an employer who is protected by the [WCA] cannot be held liable to an employee in tort, and therefore technically cannot be a joint tortfeasor" under the UCATA); *Holbrook*, 2009 WL 365681, at *32–33 (same). In other words, the WCA "actually abolishes the right of contribution which third party tortfeasors had against employers." *Tsarnas v. Jones & Laughlin Steel Corp.*, 412 A.2d 1094, 1098 (Pa. 1980); *see also Bell v. Koppers Co.*, 392 A.2d 1380, 1382 (Pa. 1978) (stating that 77 P.S. § 481(b) "more than alters, it obliterates, a cause of action," effectively "foreclose[ing] the adjudication of the liability of the employer").

The Court, therefore, rejects Dominion's argument that it has a right to contribution from WEG/Univar—Hydak's employer—under the UCATA. The Court further holds that Dominion's contribution claim is barred by the WCA, as Dominion has not pleaded—or even argued—that there is a provision providing a right to contribution in any contract between the parties. *See* 77 P.S. § 481(b). As such, Count III of the Third-Party Complaint will be dismissed with prejudice. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

## III.  CONCLUSION

For the foregoing reasons, the Court will grant Univar and WEG's Motion to Dismiss Third-Party Complaint (ECF No. 17).  Counts I and II of the Third-Party Complaint (ECF No. 5) will be dismissed without prejudice, as such claims are subject to a contractual forum selection clause.  Dominion may re-file these claims in the Circuit Court of Chesterfield, Virginia, or the United States District Court for the Eastern District of Virginia, Richmond Division.  Count III will be dismissed with prejudice, as it is barred by Pennsylvania law.  An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated:

__5/5/2022_____